**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE GUADALUPE PARRA-AVALOS,<br><br>Defendant. | Case No. 2:19-cr-00075-APG-CWH<br><br>**REPORT AND RECOMMENDATION** |

Presently before the court is defendant Jose Parra-Avalos's motion to dismiss the indictment (ECF No. 14), filed on April 29, 2019. The government filed a response (ECF No. 19) on May 10, 2019, and the defendant filed a reply (ECF No. 20) on May 14, 2019. Trial is set for June 3, 2019. (Order Regarding Trial (ECF No. 18).)

**I.   BACKGROUND**

In 2009, the defendant, Jose Guadalupe Parra-Avalos was convicted in the State of Nevada for possession of cocaine with intent to sell in violation of Nevada Revised Statute ("N.R.S.") § 453.337, and for sale of heroin in violation of N.R.S. § 453.321. These convictions purportedly each qualify as aggravated felony drug offenses under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), and as controlled substance offenses under Section 237(a)(2)(B)(i). *See* 8 U.S.C. § 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i). In September 2010, Parra-Avalos was issued a Notice to Appear ("NTA") that did not contain the date and time of his immigration hearing. He was later provided notice of the date and time of the immigration court hearing, and personally appeared at the hearing, and was deported.

On March 27, 2019, Parra-Avalos was charged with illegal re-entry in violation of 8 U.S.C. § 1326, based on three prior removals on September 30, 2010, November 27, 2012, and February 25, 2014. (Indictment (ECF No. 1).) Parra-Avalos argues that because his 2009

convictions did not qualify as offenses sufficient to support his removal, the 2010 removal order was defective, and each subsequent removal, which were based upon a reinstatement of the 2010 removal order, was also defective. Additionally, Parra-Avalos argues that the immigration judge lacked jurisdiction to order his removal because he did not receive proper notice of the deportation hearing. Accordingly, Parra-Avalos argues that the indictment should be dismissed.

## II.     ANALYSIS

### A. Standards for Reviewing Collateral Attacks on Prior Deportation Orders

Under 8 U.S.C. § 1326(d), a defendant who collaterally attacks the validity of an underlying deportation normally must demonstrate that: (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." If a "[d]efendant was not convicted of an offense that made him removable under the INA to begin with, he is excused from proving the first two requirements" of § 1326(d). *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017); *see also United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006). "With respect to § 1326(d)(3) . . . if [a] [d]efendant was removed when he should not have been, his . . . removal was fundamentally unfair, and he may not be convicted of reentry after deportation." *Ochoa*, 861 F.3d at 1015 (internal quotations omitted). A defendant is excused from the first two requirements, and satisfies the third requirement, if he shows that he was not removable as charged in the notice to appear. *Id.*

The 2010 notice to appear charged Parra-Avalos as being removable as an aggravated felon and as having committed offense related to controlled substances after his admission into the United States. These allegations were based on prior convictions for transport of a controlled substance, in violation of N.R.S. § 453.321, and possession of a controlled substance for sale, in violation of N.R.S. § 453.337. Parra-Avalos argues that the immigration judge committed legal error when he found that the Nevada convictions met the relevant definitions for an aggravated felony and an offense relating to controlled substances. Because of this legal error, Parra-Avalos

was "removed when he should not have been" and therefore cannot be convicted of illegal reentry on the basis of this invalid removal order. *Camacho-Lopez*, 450 F.3d at 930.

The government argues that, although it concedes that under current Circuit precedent, Parra-Avalos is excused from satisfying the first two requirements of the analysis, that the court should nevertheless impose the requirements of the statute as written. Specifically, the government argues that because Parra-Avalos cannot show both that he has exhausted any administrative remedies that may have been available, and that deportation proceedings improperly deprived him of the opportunity for judicial review, his motion should be denied. The government points to evidence indicating that Parra-Avalos participated in a hearing before the immigration judge, proceeded pro se, made admissions leading to his removal, and expressly waived his rights to appeal, and therefore he is precluded from obtaining relief under 8 U.S.C. § 1326(d).

As discussed, Ninth Circuit precedent clearly establishes that Parra-Avalos is excused from proving the first two requirements if deportation was fundamentally unfair because the Nevada convictions did not meet the relevant definitions for an aggravated felony and an offense relating to controlled substances under INA § 237(a)(2)(B). The court next determines whether removal could be based upon the Nevada convictions.

**B. Parra-Avalos's 2009 Convictions**

INA § 237(a)(2)(A)(iii) provides that an alien is subject to removal if at any time after admission into the United States the alien is convicted of an aggravated felony. 8 U.S.C. §1227(a)(2)(A)(iii). INA § 101(a)(43)(B) defines an aggravated felony as illicit trafficking in a controlled substance (as defined in 21 U.S.C. § 802). *See* 8 U.S.C. § 1101(a)(43)(B). INA § 237(a)(2)(B)(i) states that an alien is also subject to removal if at any time after admission into the United States the alien is "convicted of a violation of … any law … relating to a controlled substance (as defined in [21 U.S.C. § 802]) . . . ." 8 U.S.C. §1227(a)(2)(B)(i). The parties agree that Parra-Avalos was convicted in 2009 of possessing cocaine with intent to sell in violation of N.R.S. § 453.337, and for sale of heroin in violation of N.R.S. § 453.321. Cocaine and heroin are controlled substances as defined in 21 U.S.C. § 802. Contrary to Parra-Avalos's argument,

because Parra-Avalos's statutes of conviction are divisible as to drug type, the court applies the modified categorical approach and can review the documents of conviction to see that Parra-Avalos's convictions qualify as aggravated felonies and controlled substance offenses under the INA § 237(a)(2)(A)(iii) and 237(a)(2)(B)(i).

### 1. Categorical Approach

Courts apply the "categorical approach" by comparing the elements of the statute of conviction with the elements of the "generic" federal crime. *See United States v. Rivera-Muniz*, 854 F.3d 1047, 1049-50 (9th Cir. 2017). If the prior statute of conviction has the same or narrower elements as the generic offense, it may serve as a statutory predicate crime. *Descamps v. United States*, 570 U.S. 254, 257 (2013).

### 2. Modified Categorical Approach

Where an overbroad statute of conviction includes multiple offenses by listing "one or more elements of the offense in the alternative," courts employ the "modified categorical approach" and consult certain case documents "to determine which alternative formed the basis of the defendant's prior conviction." *Id.* This allows courts to "compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id*.

When a court encounters an overbroad statute of conviction containing alternative phrases, the first task is "to determine whether its listed items are elements or means." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). If they are elements, the court should apply the modified categorical approach to determine which enumerated alternative element comprised the defendant's conviction, and then compare the elements to the generic offense. *See id.* If, on the other hand, the listed items merely describe alternate factual means of committing a crime, the court may not consider which factual alternative led to a conviction. *See id*. To make this elements/means determination, a court should look to "authoritative sources of state law," including first and foremost "a[ny] state court decision definitively answer[ing] the question[.]" *Id*. Absent such a decision, a court can examine the statute itself for clues about the alternatives (e.g., alternatives with different punishments are elements whereas illustrative examples are

means). *Id*. If state law lacks a clear answer, judges can "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense" (e.g., how indictment and jury instructions were drafted). *Id*. at 2256-57 (internal quotation marks and alterations omitted).

Parra-Avalos's 2009 convictions that caused his removal are for violating: 1) N.R.S. § 453.337, which prohibits possessing for sale any Schedule I or II controlled substance; and 2) N.R.S. § 453.321, the sales statute which prohibits selling any Schedule III, IV, or V controlled substance. Because at least some of Nevada's drug schedules list substances which are not on the federal list, Nevada's drug schedules are overbroad as to drug type. *See Madrigal-Barcenas v. Lynch*, 797 F.3d 643, 645 (9th Cir. 2015). Because they are divisible as to drug type, the court will examine record documents to see that Parra-Avalos was convicted for a drug contained in the federal schedules. *See United States v. Leal-Vega*, 680 F.3d 1160, 1167-68 (9th Cir. 2012).

The Nevada Supreme Court has held that N.R.S. § 453.3385 – Nevada's drug trafficking statute – "creates a separate offense for each schedule I controlled substance simultaneously possessed by a person." *Andrews v. State*, 412 P.3d 37, 38 (Nev. 2018) (the Nevada Supreme Court also agreed with defendant's argument that the "unit of prosecution" for N.R.S. § 453.3385 is "the possession of each schedule I controlled substance"). The court's analysis applies equally to N.R.S. § 453.337 and N.R.S. § 453.321, statutes within Nevada's Uniform Controlled Substances Act. The identity of the controlled substance constitutes an element of the offense. *See also Muller v. Sheriff, Clark Cty.*, 572 P.2d 1245 (Nev. 1977) (in a single drug transaction, the sale of heroin and the sale of cocaine are distinct offenses requiring separate and different proof).

Applying the modified categorical approach, Parra-Avalos's offenses involved cocaine and heroin, which are undeniably substances which are criminalized in the federal schedules. In the first Nevada State criminal case, C132782, the information charged that on "the 6th day of April, 1996, . . . [Parra-Avalos] did then and there willfully, unlawfully, feloniously, knowingly, and intentionally possess, for the purpose of sale, a controlled substance, to-wit: Cocaine." (Resp. (ECF No. 19-1) at 13-14.) In the second Nevada criminal case, C216758, the information

charged that on "the 10th day of August, 1998, . . . [Parra-Avalos] did then and there willfully, unlawfully, and feloniously sell to [M.M.], a controlled substance, to-wit: Diacetylmorphine, commonly known as Heroin." (Resp. (ECF No. 19-2) at 12-13.) Each information charges Parra-Avalos for only one kind of drug, suggesting it is an element of each offense, and therefore his convictions qualify as aggravated felonies under INA § 237(a)(2)(A)(iii) and controlled substance offenses under INA § 237(a)(2)(B)(i). Thus, he was properly ordered removed based upon those convictions.

### C. The Immigration Court's Jurisdiction

Parra-Avalos argues that because the NTA before the immigration court did not contain information regarding the date and time, his due process rights were violated because the immigration court lacked jurisdiction to order him removed. Parra-Avalos must demonstrate that he was prejudiced by a due process violation in the proceedings underlying his removal order. *See United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). Here, Parra-Avalos was later provided notice of the date and time of the immigration court hearing, personally appeared at the hearing, and was deported. Circuit law is clear that the immigration court has jurisdiction despite the lack of a date and time in the NTA. *See Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) (rejecting the argument that a deficient Notice to Appear deprived an immigration judge of jurisdiction over an alien's removal proceeding). *See also, United States v. Valverde-Rumbo*, 2019 WL 1458247 (9th Cir. 2019) (unpublished) (same). The immigration court had jurisdiction to remove Parra-Avalos, he received all the due process he was owed during the removal proceedings, and to the extent there were any deficiencies, he cannot establish prejudice.

### III. CONCLUSION

IT IS THEREFORE RECOMMENDED that defendant Parra-Avalos-Avalos's motion to dismiss indictment (ECF No. 14) be DENIED.

### IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: May 21, 2019

_____
C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE